UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NOEMI BIRRIEL BONILLA,

    Plaintiff,

v.                                    CASE NO. 8:15-CV-2929-T-MAP

NANCY BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.
_____/

**ORDER**

This is an action for review of the administrative denial of disability insurance benefits (DIB) and period of disability benefits. *See* 42 U.S.C. § 405(g). Plaintiff argues that the decision of the Administrative Law Judge (ALJ) is not supported by substantial evidence because the ALJ discounted her treating physician's opinion without good cause and did not properly weigh the remaining evidence. After considering the parties' briefs (docs. 22-23) and the administrative record, I find that the ALJ applied the proper standards. Substantial evidence supports the ALJ's decision that Plaintiff is not disabled; I affirm the ALJ's decision.

    *A.*    *Background*

Plaintiff Noemi Birriel Bonilla was born on July 8, 1963, and is a high school graduate. She worked as a hospital helper, a bookstore cashier, and an electric assembler before applying for DIB. Plaintiff alleges disability commencing December 22, 2006, due to arthritis, neck pain, back pain, gastritis, and osteoporosis of the hip. Plaintiff's date of last insured (DLI) is December 31, 2011, and Plaintiff must establish that she is disabled on or before her DLI to be entitled to benefits.

After a hearing, the ALJ found Plaintiff has the severe impairments of "degenerative disc

disease (DDD) of the cervical and lumbar spine, osteopenia, and osteoporosis." (R. 31) Aided by the testimony of a VE, the ALJ determined that Plaintiff is not disabled and has the residual functional capacity (RFC) to perform light work with some limitations:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following limitations: lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; standing, walking, and/or sitting for a total of about six hours each in an eight-hour workday with normal breaks; frequently climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, but never climbing ladders, ropes, or scaffolds; and avoiding concentrated exposure to vibrations and hazards, such as moving machinery and unprotected heights.

(R. 32)

The ALJ determined that, with this RFC, Plaintiff could perform her past relevant work as an electric assembler and could also perform light work as a small products assembler, laundry sorter, and housekeeper. (R. 38-40)  The Appeals Council denied review.  Plaintiff, who has exhausted her administrative remedies, filed this action.

  *B.  Standard of Review*

To be entitled to DIB, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).  A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated detailed regulations that are currently in effect.  These regulations establish a

"sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits her ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of her prior work, the ALJ must decide if the claimant can do other work in the national economy in view of her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

C.  Discussion

1.  *Treating Physician's Opinion*

Plaintiff contends the ALJ erroneously discounted the opinion of Dr. Sumulong, Plaintiff's primary care provider. In March 2005 (more than a year and a half before Plaintiff's alleged onset date), Dr. Sumulong wrote a letter confirming that Plaintiff is "a well known patient of mine" and "because of her conditions she can only work 4 hours sitting down and 4 hours standing. Patient can only work 40 hours a week at 8 hours a day." (R. 523-24) The ALJ discounted the doctor's finding that Plaintiff can only stand for half of a work day and must sit for the remainder of the time: "Although Dr. Sumulong had a treating relationship with the claimant, the undersigned does not accord controlling, or great, weight to Dr. Sumulong's opinion because he did not assign the claimant any other limitations, including how much she could lift, and his opinion was rendered more than a year and a half prior to the alleged onset date." (R. 37) According to the Commissioner, good cause supports this because Dr. Sumulong's opinion is inconsistent with later treatment records (concerning Plaintiff's medical care during the relevant time period) and Plaintiff's work history.

Medical opinions are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) (*quoting* 20 C.F.R. § 404.1527(a)(2)). A court must give a treating physician's opinions substantial or considerable weight unless "good cause" is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause for disregarding such opinions "exists when the: (1) treating physician's

4

opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citation omitted). With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate the reasons for doing so." *Winschel*, 631 F.3d at 1179 (*quoting Phillips v. Barnhart*, 357 at 1240 n.8). Additionally, the ALJ must state the weight given to different medical opinions and the reasons therefor. *Id.*; *see also* 20 C.F.R. § 404.1574(a)(1-2). Otherwise, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Specifically, the opinions of examining physicians are given more weight than non-examining physicians, treating more than non-treating physicians, and specialists more than non-specialists physicians. 20 C.F.R. § 404.1574(d)(1),(2),(5).

The ALJ had good cause to discount Dr. Sumulong's opinion. First, it was not rendered during the relevant time period. To determine if Plaintiff could perform her past relevant work, the ALJ had to assess Plaintiff's RFC during the time period between her alleged onset date (December 22, 2006) and her DLI (December 31, 2011). *See Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831-32 (11th Cir. 2011) (the relevant disability period is between the alleged onset date and the DLI). A claimant who becomes disabled after she loses insured status must be denied DIB despite her disability. *Douglas v. Comm'r of Soc. Sec.*, 486 F. App'x 72, 75 (11th Cir. 2012). Although the ALJ is permitted to consider "evidence from before and after the relevant period" it is only relevant to the extent it has "bearing on [a claimant's] disability during the relevant time." *Id.* Here, the ALJ disregarded Dr. Sumulong's limitations as being too far removed in time to be relevant. Substantial

5

evidence supports this. For example, after Dr. Sumulong wrote his letter in March 2005, Plaintiff returned to full time work as an electric assembler until December 2006 (her alleged onset date). That job required her to stand for up to 8 hours at a stretch and lift up to 30 pounds, and she performed that job for over a year and a half before alleging disability. This is compelling evidence that Plaintiff was not as limited as Dr. Sumulong opined.

Second, Dr. Sumulong's limitations are not supported by the other medical evidence, even around the same time period. In February 2005, a month before Dr. Sumulong's letter, x-rays showed Plaintiff had "a transitional vertebra which will be designated at L5 with partial sacralization on the left." (R. 539) There was "mild narrowing of the transitional L5-S1 disc lever. Vertebral body heights are maintained and remaining disc heights are maintained. There is no evidence of anterolisthesis. There is spur formation or calcification in the anterior aspect of the T11-12 disc. No evidence of compression fracture or anterolisthesis" (*Id*.) Two weeks after these x-rays (and two weeks before Dr. Sumulong wrote his letter), Dr. Katz interpreted an MRI of Plaintiff's lumbar spine. (R. 535) The MRI showed that "[t]he lumbar thecal sac is outlined in its entirety and appears intrinsically normal without evidence for tumor, hemorrhage, or edema. No paravertebral masses are seen and the lumbar vertebral body and intervertebral disc space heights are maintained. There is a mild degree of disc desiccation at L4-L5 although intervertebral disc space heights are maintained." (*Id*.) There were "no significant lumbar spinal canal compromises. Specifically, nerve roots, neural foramina, lateral recesses and facet joints all appear normal bilaterally at all of these levels." Dr. Katz concluded Plaintiff had a mild degree of disc desiccation at L4-L5, but the MRI was "otherwise normal." (*Id*.)

Third, treatment records within the relevant time period support less restrictive limitations

6

on Plaintiff's ability to stand and sit than those endorsed by Dr. Sumulong. Plaintiff treated with neurosurgeon Dr. Inga from August 2006 through March 2012. Dr. Inga diagnosed Plaintiff with lumbar and cervical discogenic disease in August 2006, ordering MRIs and treating her with medication. The MRI showed Plaintiff had a small degenerative disc bulge at level L5-S1 and small bulging discs at levels C4-5 and C5-6. Dr. Inga decided on "conservative management" of Plaintiff's impairments, prescribing medications and a lumbosacral corset. In November 2006, Plaintiff again complained of pain, but Dr. Inga did not alter course. And on March 1, 2012, two months after Plaintiff's DLI, Dr. Inga summarized Plaintiff's treatment history: "The patient was treated conservatively and the symptoms improved. She was doing well, for the most part, *up to the last few months* when she started again complaining of cervical and lumbar symptomatology." (R. 416) (emphasis added). So, according to the timing of this treatment note, Plaintiff's turn for the worse may have occurred before her DLI of December 31, 2011. But was it a disabling turn? In March 2012, Dr. Inga confirmed Plaintiff's diagnosis of discogenic disease in the cervical and lumbar regions and ruled out a focal neurological deficit.[1] He noted Plaintiff's increased pain, adjusted her medications, and ordered another MRI, but his treatment note does not suggest disabling limitations.

Additionally, Dr. Figueroa-Nieves, another of Plaintiff's primary care doctors, ordered X-rays in June 2011 that "were normal except for arthritis in thoracic spine. Back pain is associated with paresthesias [pins and needles feeling] of lower extremities and limited ambulation. Has had some neck pain for a few weeks." (R. 336) But in August 2011, Plaintiff told Dr. Figueroa-Nieves that her pain from June was improved and that Tylenol and Aleve helped with her joint and back pain. (R. 335-36) The doctor's physical exam of Plaintiff showed she had full range of motion in all

---

[1] A focal neurologic deficit is a problem with nerve, spinal cord, or brain function.

joints, no focal neurological deficits, normal sensation, normal muscle strength, and a negative bilateral straight leg raise test.[2] (R. 336-37) Considering the medical records as a whole, substantial evidence supporting the ALJ's decision to discount the limitations Dr. Sumulong prescribed for Plaintiff.[3]

    2.    *Weight of the Evidence*

Next, Plaintiff contends the ALJ erred by not specifying the weight she assigned to Dr. Stanley's opinion. Dr. Stanley was a state-agency, non-examining physician who, in July 2012, opined at the reconsideration stage that Plaintiff is not disabled and is capable of a full range of light work. (R. 97-98) But Dr. Stanley also concluded that Plaintiff's statements about the limiting effects of her impairments were substantiated by the medical evidence – Plaintiff was credible. The ALJ found the opposite, that the medical evidence did not support Plaintiff's allegations of disabling pain. The ALJ found that "the objective medical evidence of record does not support the degree of impairment alleged by the claimant during the period at issue, although her condition may have worsened after that time." (R. 36) Although the ALJ did not address Dr. Stanley's credibility finding, she did consider Dr. Stanley's opinion as a whole: "[T]he opinion of the State agency medical doctor at the reconsideration level [is] generally persuasive, but a few adjustments have been made given the evidence of record as a whole when considered through the date last insured." (R.

---

[2] If the test subject has pain down the back of her leg below the knee when her leg is raised, the test is positive (abnormal). This means that one or more of the nerve roots leading to the sciatic nerve may be compressed, most likely due to a herniated disc in the lower back.

[3] Plaintiff also argues that the ALJ erred because she did not particularize the reduced weight she assigned to Dr. Sumulong's opinion. Based on the weight of the evidence supporting the ALJ's decision, I find this is harmless error. *See Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013).

37)

The ALJ is not required to refer to every aspect of Dr. Stanley's opinion, provided it is clear to me that the ALJ considered Plaintiff's impairments as a whole. *Adams v. Comm'r of Soc. Sec.*, 586 F. App'x 531, 533 (11th Cir. 2014). This is especially so because Dr. Stanley is a state agency, non-examining physician, not a treating source. And, Plaintiff does not challenge the ALJ's credibility determination. In this circumstance, the ALJ's decision is based on substantial evidence.

*D.    Conclusion*

The ALJ's decision is supported by substantial evidence. Therefore, it is ORDERED:

1. The decision of the Commissioner is AFFIRMED; and

2. the Clerk of Court is directed to enter final judgment in favor of the Commissioner.

DONE and ORDERED in Tampa, Florida on February 27, 2017.

*/s/ Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE